UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL R. COFFMAN,<br><br>                   Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                   Defendant. | Case No.: 18cv546-JLS(BLM)<br><br>**REPORT AND RECOMMENDATION FOR ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND REMANDING FOR FURTHER PROCEEDINGS**<br><br>**[ECF Nos. 20 and 21]** |

Plaintiff Daniel R. Coffman brought this action for judicial review of the Social Security Commissioner's ("Commissioner") denial of his claim for disability insurance benefits. ECF No. 1. Before the Court are Plaintiff's Motion for Summary Judgment[1] [ECF No. 20 ("Pl.'s Mot.")], Defendant's Cross-Motion for Summary Judgment and Opposition to Plaintiff's motion [ECF No. 21-1 ("Def.'s Mot.")],[2] Plaintiff's Opposition to Defendant's Cross-Motion for Summary Judgment

---

[1] Plaintiff labeled his Motion "Cross Motion for Summary Judgment," however, the Court interprets ECF No. 20 to be Plaintiff's Motion for Summary Judgment.

[2] Defendant's Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment appear on the docket as two documents, ECF Nos. 21 & 22. However, the content of the documents is the same. For clarity, the Court will refer to Defendant's cross-

and Reply [ECF No. 23 ("Pl.'s Oppo.")], and Defendant's Reply [ECF No. 26 ("Def.' Reply")].

This Report and Recommendation is submitted to United States District Judge Janis L. Sammartino pursuant to 28 U.S.C. § 636(b) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California. For the reasons set forth below, this Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **GRANTED IN PART AND DENIED IN PART**, Defendant's Cross-Motion for Summary Judgment be **GRANTED IN PART AND DENIED IN PART**, and the case be remanded for further proceedings.

## PROCEDURAL BACKGROUND

On January 20, 2014, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning on November 1, 2012. See Administrative Record ("AR") at 135-46. Plaintiff also filed a Title XVI application for supplemental security income on January 24, 2014. AR at 147-57. Both claims were denied initially on January 1, 2015, and upon reconsideration on February 26, 2015, resulting in Plaintiff's request for an administrative hearing. Id. at 190-96, 198-204. Plaintiff requested the administrative hearing on April 6, 2015. Id. at 205-06.

On June 6, 2017, a hearing was held before Administrative Law Judge ("ALJ") Keith Dietterle. Id. at 116-133. Plaintiff, as well as an impartial medical expert, Dr. Duby, testified at the hearing. Id. An impartial vocational expert ("VE") Mr. Ramos was also present, but did not testify. Id. After questioning Dr. Duby, the ALJ concluded that additional records were needed in order for Dr. Duby to make a determination about Plaintiff's condition. Id. at 129-130. Accordingly, the ALJ continued the hearing and did not determine whether Plaintiff was disabled and entitled to benefits. Id. at 133.

On July 5, 2017, the hearing continued before ALJ Keith Dietterle. Id. at 10, 90-115. Plaintiff, a different VE, Connie Guillory, and Dr. Duby, testified at the hearing. Id. In a written decision dated August 18, 2017, ALJ Dietterle determined that Plaintiff had not been under a

_____

motion and opposition as one document, namely, "Def.'s Mot."

disability, as defined in the Social Security Act, from November 1, 2012 through the date of the ALJ's decision.  Id. at 7-28.  Plaintiff requested review by the Appeals Council.  Id. at 363-64. In an order dated February 28, 2018, the Appeals Council denied review of the ALJ's ruling, and the ALJ's decision therefore became the final decision of the Commissioner.  Id. at 1-6.

On March 15, 2018, Plaintiff, who is proceeding *pro se*, filed the instant action seeking judicial review by the federal district court.  See ECF No. 1.  On August 3, 2018, Plaintiff filed a Motion for Summary Judgment alleging "that the Commissioner's final decision is not based on factual details," that there are errors in Defendant's Answer to Plaintiff's Complaint, and that Plaintiff's case "has not been reviewed by the Commissioner of Social Security and the Commissioner's attorney team is not aware of [his] medical history."  Pl.'s Mot. at 2-3.  Plaintiff requests "the full capped award for disability," the "highest level of SSI supplemental income on their scale," and "damages for emotional stress for having to go over this case packet" in the amount of $100,000.  Id. at 3.  Defendant filed a timely Cross-motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment asserting that the ALJ properly found that "Plaintiff's ulcerative colitis was severe, but not disabling."  Def's Mot. at 5.  Plaintiff opposed Defendant's motion and replied by going through statements from Def's Mot. and discussing his issues with those statements.  Pl.'s Oppo.  Defendant replies that the ALJ's finding was supported by substantial evidence of record and that the ALJ fully considered all of the medical evidence of record in reaching his decision.  Def.'s Reply at 1-2. Defendant further replies that Plaintiff improperly relies on newly submitted evidence that is outside of the relevant time period, immaterial, and fails to undermine the ALJ's finding that Plaintiff was not disabled.  Id. at 2-3.

## ALJ's DECISION

On August 23, 2017, the ALJ issued a written decision in which he determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from November 1, 2012 through the date of the ALJ's decision.  AR at 7-28.  The ALJ determined that Plaintiff had not engaged in substantial gainful activity during the relevant time period.  Id. at 13.  The ALJ then considered all of Plaintiff's medical impairments and determined that the following impairments were "severe" as defined in the Regulations: "ulcerative colitis; osteoarthritis of the

right hip; degenerative disease of the lumbar spine; osteoarthritis of the left hip; osteoarthritis of the cervical spine; sleep apnea; and, arthritis of the shoulders (20 CFR 404.1520(c) and 416.920(c))." Id. At step three, the ALJ found that Plaintiff's medically determinable impairments or combination of impairments did not meet or medically equal the listed impairments. Id. In reaching this decision, the ALJ noted that each impairment did not meet or medically equal the severity of one of the listed impairments in 20 CFR part 404, Subpart P, Appendix 1. Id.

At step four, the ALJ considered Plaintiff's severe impairments and determined that his residual functional capacity ("RFC") permitted him

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant can sit two hours at a time for a total of six hours in an eight hour day; stand one hour at a time for a total of two hours in an eight hour day; walk one hour at a time for a total of two hours in an eight hour day; occasionally lift twenty pounds, frequently lift ten pounds; frequently carry ten pounds; occasionally reach overhead with the right upper extremity; frequently reach overhead with the left upper extremity; all other reaching can be done frequently; occasional handling and fingering and feeling with both hands; frequent operation of foot controls bilaterally; occasional unprotected heights and temperature extremes; frequent fast moving machinery, wetness, humidity, driving automotive equipment, exposure to dust fumes gasses; vibrations.

Id. at 14. The ALJ found that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with all the medical evidence and other evidence in the record." Id. at 15. In reaching this decision, the ALJ gave significant weight to the medical records reflecting that Plaintiff's conditions have significantly improved with treatment since late 2012 and some weight to the State Agency medical examiners. Id. at 15, 17. The ALJ explained

> [t]he objective medical evidence, showing rather routine and conservative management of the claimants conditions, and mostly mild to moderate imaging and clinical findings, simply does not establish physiological abnormalities, which

would limit the claimant's daily activities to the debilitating degree alleged or preclude the claimant from performing at the residual functional capacity as assessed above.

Id. at 18.

The ALJ concluded that Plaintiff is able to perform his past relevant work ("PRW") as an electromechanical assembler and assembly supervisor as it is "actually and generally performed." Id.

**STANDARD OF REVIEW**

Section 405(g) of the Social Security Act permits unsuccessful applicants to seek judicial review of the Commissioner's final decision. 42 U.S.C. § 405(g). The scope of judicial review is limited in that a denial of benefits will not be disturbed if it is supported by substantial evidence and contains no legal error. Id.; see also Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004).

Substantial evidence is "more than a mere scintilla, but may be less than a preponderance." Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001) (citation omitted). It is "relevant evidence that, considering the entire record, a reasonable person might accept as adequate to support a conclusion." Id. (citation omitted); see also Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003). "In determining whether the [ALJ's] findings are supported by substantial evidence, [the court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (citations omitted). Where the evidence can reasonably be construed to support more than one rational interpretation, the court must uphold the ALJ's decision. See Batson, 359 F.3d at 1193. This includes deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts. See Lewis, 236 F.3d at 509.

Even if the reviewing court finds that substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision. See Batson, 359 F.3d at 1193. Section

5

405(g) permits a court to enter judgment affirming, modifying, or reversing the Commissioner's decision.  42 U.S.C. § 405(g).  The reviewing court may also remand the matter to the Social Security Administration for further proceedings.  Id.

## **DISCUSSION**

Plaintiff seeks to have his case reviewed and for the Court to enter a decision in his favor.  Pl.'s Mot. at 2.  Plaintiff argues that Defendant did not properly review his case and does not understand his medical history.  Id. at 3.  Plaintiff also argues that he is still in treatment for his ulcerative colitis and that his medications have increased.  Id.  In support, Plaintiff has attached additional recent medical records to his motion.  Id.  Plaintiff further argues that in reaching his decision, the ALJ failed to consider Plaintiff's urination problem, which is directly linked to his ulcerative colitis.  Id.  Plaintiff seeks (1) back pay, (2) costs, (3) "disbursement and damages for emotional distress for having to do a review [him]self[,]" (4) "the full capped award for disability" or the "highest level of SSI supplemental income on their scale[,]" (5) the amount of money that would be paid to an attorney to review his packet, and (6) $100,000 in emotional distress damages.  Id. at 2-4.

Defendant contends that substantial evidence supports the ALJ's RFC finding that Plaintiff can perform light work and that the ALJ properly considered Plaintiff's subjective complaints.  Def.'s Mot. at 8-15.  Defendant also contends that the medical records submitted by Plaintiff for the first time with his motion for summary judgment are not material evidence supporting a sentence six remand.  Id. at 15-16.

Plaintiff replies that the ALJ's qualifications to decide his case are questionable and that Plaintiff included a list of impairments in his original filings that were not properly discussed or considered.  Pl.'s Oppo. at 2.  Plaintiff also replies that he reported that his ulcerative colitis was severe even though he did not have his colon removed and that his condition is not under control even with medication.  Id.  Plaintiff notes that he has been seen in the VA medical system on multiple occasions since November 2012.  Id. at 3.  Plaintiff further replies that he raised the issue of the limitation in his right arm during the hearing and that he now has arthritis in multiple parts of his body that is linked to his ulcerative colitis.  Id. at 4.

18cv546-JLS(BLM)

Defendant reasserts its previous arguments and replies that the ALJ's decision was supported by substantial evidence. Def.'s Reply at 1-2. Defendant also replies that the ALJ properly considered all of Plaintiff's impairments and the medical evidence of record and states that "Plaintiff has not identified any medical evidence that undermines the ALJ's conclusion that Plaintiff could perform a range of light work." Id. at 2. Defendant further replies that the ALJ reasonably found that Plaintiff's symptoms were sufficiently controlled with treatment and did not result in disabling limitations. Id. Defendant notes that Plaintiff's new evidence is not material to this case and that the records that do pertain to the appropriate time period do not undermine the ALJ's finding. Id. Finally, Defendants reply that the ALJ's weighing of the evidence should be upheld as he was the fact finder in this matter and based his decision on a reasonable interpretation of the record. Id. at 3.

## A.  **Treating Physician**

Plaintiff argues that the ALJ did not properly review his case in light of his medical history or consider all of the relevant evidence. Pl.'s Mot. at 3; see also Pl.'s Oppo. at 3. While not clearly stated, Plaintiff appears to argue that the ALJ committed legal error because he did not properly consider the opinion of Plaintiff's treating physician, Dr. Bittleman. Pl.'s Oppo. at 3. Plaintiff notes that the ALJ did not value Dr. Bittleman's opinion classifying Plaintiff as permanently disabled in the VA medical system and that the ALJ was not qualified to reject the findings of his treating physician. Id. Defendant does not discuss Dr. Bittleman's findings or provide a treating physician analysis, but contends that the ALJ's RFC finding was supported by substantial evidence and notes that the opinions of Drs. Duby, Wellons, Do, and Doa were consistent with that evidence. Def.'s Mot. at 8.

### 1.  Relevant Law

The opinion of a treating doctor generally should be given more weight than opinions of doctors who do not treat the claimant. See Turner v. Comm'r of Soc. Sec., 613 F. 3d 1217, 1222 (9th Cir. 2010) (citing Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995)). If the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. Id. (citing Lester, 81 F.3d

at 830-31). Even when the treating doctor's opinion is contradicted by the opinion of another doctor, the ALJ may properly reject the treating doctor's opinion only by providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so. <u>Id.</u> (citing <u>Lester</u>, 81 F.3d at 830-31). This can be done by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [his] interpretation thereof, and making findings." <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989)). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." <u>Orn v. Astrue</u>, 495 F.3d 625, 632 (9th Cir. 2007) (quoting <u>Embrey v. Bowen</u>, 849 F.2d 418, 421-22 (9th Cir. 1988)). "The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician; such an opinion may serve as substantial evidence only when it is consistent with and supported by other independent evidence in the record." <u>Townsend v. Colvin</u>, 2013 WL 4501476, *6 (C.D. Cal. Aug. 22, 2013) (quoting <u>Lester</u>, 81 F.3d at 830–31) (citing <u>Morgan</u>, 169 F.3d at 600).

If a treating doctor's opinion is not afforded controlling weight, "the ALJ must consider the 'length of the treatment relationship and the frequency of examination' as well as the 'nature and extent of the treatment relationship' .... In addition, the ALJ must still consider the other relevant factors such as 'the amount of relevant evidence that supports the opinion and the quality of the explanation provided' and 'the consistency of the medical opinion with the record as a whole.'" <u>West v. Colvin</u>, 2015 WL 4935491, at *8 (D. Or. Aug. 18, 2015) (quoting <u>Orn</u>, 495 F.3d at 631; 20 C.F.R. §§ 416.927(c); and 404.1527(c)).

2. <u>Relevant Medical History, Findings, And Testimony</u>

In February 2014, Dr. Bittleman, Plaintiff's primary care physician dating back to at least 2013, opined that given Plaintiff's "extreme fatigue and poor response to treatment for ulcerative colitis, the vet is unable to work at any job and should be considered completely disabled." <u>Id.</u> at 732, 2336. He also stated that in his opinion, Plaintiff "will be unable to work in the foreseeable future at any job and should be considered permanently disabled." <u>Id.</u> at 737, 2341.

In the Crohn's and Colitis RFC Questionnaire and general Physical RFC Questionnaire where he wrote those opinions, Dr. Bittleman noted that Plaintiff had a fair prognosis, but that (1) Plaintiff's symptoms were constantly severe enough to interfere with his attention and concentration, (2) Plaintiff was incapable of even "low stress" jobs, (3) Plaintiff would need to take several unscheduled restroom breaks during an eight-hour working day, (4) Plaintiff would need to lie down or rest during unpredictable intervals during an eight-hour work day, (5) Plaintiff is likely to be absent from work more than four days a month, and (6) Plaintiff was "unable to work at all."[3] Id. at 728-730, 735, 737, 2334-2335, 2338-2340.

Dr. Wellons, a State Agency Medical Examiner who did not examine or treat Plaintiff, but reviewed his medical records, completed a Disability Determination Explanation form on July 24, 2014 and opined that Plaintiff had a RFC that allowed Plaintiff to occasionally lift, carry, or upward pull twenty pounds, and frequently lift, carry, or upward pull ten pounds, stand, walk, or sit six hours in an eight hour day, be unlimited with pushing, pulling or operating hand or foot controls, and that Plaintiff had no manipulative, visual, communicative, or postural limitations. Id. at 143, 154. Dr. Do, a State Agency Medical Examiner who did not examine or treat Plaintiff, but reviewed his medical records, completed a Disability Determination Explanation form at the reconsideration level on January 5, 2015 and reached the same conclusion as Dr. Wellons. Id. at 158-185.

Dr. Doa, a Board Eligible doctor of internal medicine, examined Plaintiff on April 7, 2014 at the request of the Department of Social Services, and concluded that Plaintiff can lift, carry, push, or pull fifty pounds occasionally and twenty-five pounds frequently and can stand or walk for six hours in an eight hour workday. Id. at 1092, 1097. Dr. Doa also concluded that Plaintiff can frequently climb, stoop, kneel, and crouch and that Plaintiff had no manipulative, visual,

---

[3] Dr. Bittleman further found that Plaintiff would only be able to sit and stand for less than two hours in an eight-hour work day and could only sit or stand for thirty minutes at one time before needing to do something else. AR at 730. Dr. Bittleman noted that Plaintiff could never lift and carry even less than ten pounds in an eight-hour workday or twist, stoop, crouch, or climb ladders, or stairs. Id. at 731, 735-736.

communicative, or environmental limitations.  <u>Id.</u> at 1097.

At Plaintiff's hearing, Medical Expert ("ME"), Dr. Duby, who reviewed Plaintiff's medical file,  testified that Plaintiff was able to lift up to ten pounds frequently, lift eleven to twenty pounds occasionally, sit for two hours at a time for a total of six hours a day, stand and walk for one hour at a time for a total of two hours in one day, reach overhead with his right arm occasionally, reach overhead with his left hand frequently, and reach with both hands frequently. <u>Id.</u> at 93.  Dr. Duby also testified that Plaintiff could handle, finger, and feel continuously with both hands, push and pull occasionally with the right hand and frequently with the left hand, frequently use both feet for foot controls, occasionally climb ramps, stairs, ladders, or scaffolds, balance, kneel, stoop, and crouch frequently, and crawl occasionally.  <u>Id.</u> at 93-94.  Dr. Duby further testified that Plaintiff could occasionally be exposed to unprotected heights, frequently be close to moving mechanical parts, operate a motor vehicle, be exposed to humidity and wetness, dust, odors, fumes, and pulmonary irritants, occasionally be exposed to extreme cold and heat, frequently be exposed to vibration, and had no noise limitations.  <u>Id.</u> at 94.

When asked if any of Plaintiff's conditions met or equaled the Commissioner's listings, Dr. Duby testified that he had a problem answering that question in part because he did not "have any GI clinic notes subsequent to November 2016 and those would be very important to me." <u>Id.</u> at 92.  When pressed to respond to the question "you don't feel that [Plaintiff] meets or equals the gastro - - the ulcerative colitis listing/GI listing" based on the current information that he had, Dr. Duby responded "[i]t's really hard to say without the doctor's notes so I don't think he meets or equals in that of the listings."  <u>Id.</u> at 93.  When asked if the symptoms of ulcerative colitis would prevent a person from showing up to work, Dr. Duby responded

> I'm just going to keep reiterating I need the gastroenteroly [sic] assessment.  I don't think it's sufficient for what I am supposed to be doing today to make my assessments based strictly upon [Plaintiff's] complaints in the report.

<u>Id.</u> at 95.  After Plaintiff provided additional testimony about his symptoms, Dr. Duby was asked if that shed any additional light on the issues.  <u>Id.</u> at 100.  Dr. Duby testified that it did shed a little additional light, however, "I really do need the gastroenterology's opinions and what they're

thinking and how – what they feel about [Plaintiff's] condition." Id. at 100.

At the end of his testimony, Dr. Duby went through Medical Listing 5.06 which discusses Inflammatory Bowel Disease ("IBD") and includes ulcerative colitis. Id. at 100-103. Dr. Duby noted that 5.06 does not consider the frequency of bowel movements in determining the severity of a claimant's IBD, but instead considers whether a patient is anemic, has low protein in their blood, or has involuntary weight loss, which Plaintiff did not have.[4] Id. at 102-103.

### 3. ALJ's Considerations

In reaching his decision, the ALJ gave "very little weight" to the February 2014 opinion of Dr. Bittleman because it was "not supported by the record, including almost normal findings reported in his own treatment records." AR at 17. The ALJ noted that Dr. Bittleman's conclusion that Plaintiff would be absent from work more than four times per month was inconsistent with the record as a whole because Plaintiff had only been hospitalized once for a few days at the time Dr. Bittleman provided that opinion. Id. at 17-18.

The ALJ gave some weight to the findings of Drs. Wellons and Do because additional evidence was provided at the hearing level showing that Plaintiff had other physical impairments causing additional functional limitations. Id. at 17.

---

[4] Medical Listing 5.06 states "Inflammatory bowel disease (IBD)documented by endoscopy, biopsy, appropriate medically acceptable imaging, or operative findings with: A. Obstruction of stenotic areas (not adhesions) in the small intestine or colon with proximal dilatation, confirmed by appropriate medically acceptable imaging or in surgery, requiring hospitalization for intestinal decompression or for surgery, and occurring on at least two occasions at least 60 days apart within a consecutive 6-month period. OR B. Two of the following despite continuing treatment as prescribed and occurring within the same consecutive 6-month period: 1. Anemia with hemoglobin of less than 10.0 g/dL, present on at least two evaluations at least 60 days apart; or 2. Serum albumin of 3.0 g/dL or less, present on at least two evaluations at least 60 days apart; or 3. Clinically documented tender abdominal mass palpable on physical examination with abdominal pain or cramping that is not completely controlled by prescribed narcotic medication, present on at least two evaluations at least 60 days apart; or 4. Perineal disease with a draining abscess or fistula, with pain that is not completely controlled by prescribed narcotic medication, present on at least two evaluations at least 60 days apart; or 5. Involuntary weight loss of at least 10 percent from baseline, as computed in pounds, kilograms, or BMI, present on at least two evaluations at least 60 days apart; or 6. Need for supplemental daily enteral nutrition via a gastrostomy or daily parenteral nutrition via a central venous catheter. See https://www.ssa.gov/disability/professionals/bluebook/5.00-Digestive-Adult.htm#5_06.

The ALJ gave little weight to Dr. Doa's opinion because it was based on a one time examination of Plaintiff and, therefore, lacking "a longitudinal picture of [Plaintiff's] health conditions." Id. at 18. In addition, since the examination by Dr. Doa, Plaintiff has been diagnosed with additional impairments affecting his functioning. Id.

The ALJ gave "great weight" to the testimony of the ME, Dr. Duby "because Dr. Duby is an expert and has reviewed the entire record including [Plaintiff's] most recent testimony." Id. at 17. The ALJ also gave great weight to Dr. Duby's testimony because his opinion was fully supported by the evidence in the record showing that Plaintiff's symptoms are controlled with conservative treatment.[5] Id.

### 4. Analysis

Dr. Bittleman's opinion was contradicted by Drs. Wellons, Do, Duby, and Dao. Id. at 136-185, 1092-1097. Because Dr. Bittleman's opinion was contradicted by other doctors, the ALJ may reject Dr. Bittleman's opinion only by providing specific and legitimate reasons supported by substantial evidence in the record. Turner, 613 F. 3d at 1222 (citing Lester, 81 F.3d at 830-31). In rejecting Dr. Bittleman's opinion, the ALJ stated that the opinion was "poorly supported by the clinical findings and examinations of [Plaintiff]" and broadly cites to Exhibit 30. Id. at 17. The ALJ further states that Plaintiff's symptoms improved after being diagnosed with ulcerative colitis and that Plaintiff reported "doing good" and "feeling okay[,]" again generally citing to Exhibit 30F.[6] Id. Exhibit 30F contains 368 pages of vitals, radiology reports, labs, consult requests, progress notes, and more from numerous doctors. Id. at 2654-3021. The ALJ states that he gives very little weight to Dr. Bittleman's findings because they are "not supported by the record, including the almost normal findings reported in his own treatment records" and cites to Exhibits 5F (97 pages), 8F (5 pages), 15F (128 pages) and 16F (118 pages). Id. at 17.

_____

[5] At no point does the ALJ's opinion address Dr. Duby's repeated statements that there were additional medical records he believed were necessary to enable him to assess Plaintiff's medical status.

[6] This argument is presented by the ALJ to support his rejection of Plaintiff's subjective symptom testimony and not for the weight he assigned to Dr. Bittleman's opinion. AR at 17.

18cv546-JLS(BLM)

Apart from quoting two comments by Plaintiff, the ALJ fails to provide specific reasons for rejecting Dr. Bittleman's findings or to identify the specific findings in Exhibits 5F, 8F, 15F, 16F, and 30F that undermine Dr. Bittleman's opinion.  Id. at 17.  The ALJ does not satisfy his burden of "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017).  As explained by the Ninth Circuit:

> To say that medical opinions are not supported by sufficient objective findings does not achieve the level of specificity our prior cases have required even when the objective factors are listed seriatim. The ALJ must do more than offer his own conclusions. He must set forth his own interpretation and explain why he, rather than the doctors, are correct.

Regenniter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1299 (9th Cir. 1999).

The one specific reason that the ALJ does provide - that Dr. Bittleman's opinion that Plaintiff would be absent from work more than four times per month is inconsistent with the records because when Dr. Bittleman provided this opinion, Plaintiff had only been hospitalized once for a few days - is misleading and not a legitimate reason for not giving weight to Dr. Bittleman's opinion.  Id. at 18.

Dr. Bittleman's opinion is dated February 2014.  Id. at 732, 2336.  The medical evidence shows that Plaintiff was admitted to the emergency room on (1) November 7, 2012 for diarrhea and bloody stool [see id. at 640], (2) November 16, 2012 for colitis and anemia [see id. at 640], (3) April 1, 2013 for benign essential hypertension [see id. at 638], (4) August 12, 2013 for orthostatic hypotension, ulcerative colitis, intestinal infection due to clostridium, and unspecified essential hypertension [see id. at 635], (5) September 3, 2013 for a bacterial infection due to anaerobes, clostridium difficile infection [see id. at 634], (6) September 24, 2013 for ulcerative colitis, infectious colitis, enteritis, gastroenteritis, and intestinal infection due to clostridium difficile, bloody stool [see id. at 633-635, 676], (7) from October 30, 2014 to November 5, 2014 for abdominal pain and worsening diarrhea due to an ulcerative colitis flare [see id. at 2486], (8) from January 12-15, 2015 for bloody diarrhea due to an ulcerative colitis flare [see id. at

2483-2485], and (9) January 13, 2017 for frequent urination and odynophagia [see id. at 2657]. While Plaintiff may only have been admitted to the hospital once at the time of Dr. Bittleman's opinion, the records shows that he was experiencing symptoms with enough severity to send him to the emergency room on numerous occasions. Additionally, while Plaintiff may not have been admitted to the hospital in all of these instances, an injury, illness, or symptom requiring hospitalization is not the only reason an individual might miss work due to an impairment. It is possible for an individual to be too ill to attend work, but not ill enough to require admission into the hospital. It also is possible that the time required for treatments, such as Remicade infusions, may impact an individuals' ability to attend work on a consistent basis. Accordingly, the Court finds that this is not a specific and legitimate reason for rejecting Dr. Bittleman's opinion.

In addition, the ALJ did not consider the length of the treatment relationship between Plaintiff and Dr. Bittleman nor the frequency of examination or nature and extent of the treatment relationship. See West, 2015 WL 4935491, at *8; Pierce v. Colvin, 2014 WL 2159388, at *2 (C.D. Cal. May 23, 2014) (stating that "[e]ven when not entitled to controlling weight, 'treating source medical opinions are still entitled to deference and must be weighed' in light of (1) the length of the treatment relationship; (2) the frequency of examination; (3) the nature and extent of the treatment relationship; (4) the supportability of the diagnosis; (5) consistency with other evidence in the record; and (6) the area of specialization.") (citing Edlund v. Massanari, 253 F.3d 1152, 1157 n.6 (9th Cir. 2001)).

Finally, it is well settled that an ALJ has an affirmative duty to fully and fairly develop the record. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). "The ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence, the ALJ's own finding that the record is inadequate or the ALJ's reliance on an expert's conclusion that the evidence is ambiguous." Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2006). "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." Tonapetyan, 242 F.3d at 1150.

In *Tonapetyan*, the Court found that while the ALJ did not specifically find that evidence of the plaintiff's mental impairment was ambiguous or that the record was inadequate, the medical expert whose opinion the ALJ relied heavily on, did find just that. *Id.* While testifying, the medical expert described the lack of certain records as "confusing," recommended that a more detailed report be obtained, and "remained equivocal throughout his testimony." *Id.* Because the ALJ relied heavily on the ME's opinion, the Court found that "the ALJ was not free to ignore [the ME's] equivocations and his concern over the lack of a complete record upon which to assess Tonapetyan's mental impairment" or the ME's recommendation that a more detailed medical report be obtained. *Id.* at 1150-1151. The ALJ's decision to do so constituted reversible error and the court remanded for further development of the record. *Id.* at 1151.

Similarly, here while the ALJ did not find that the evidence was ambiguous or inadequate, he assigned "great weight" to the medical opinions of Dr. Duby who testified that the he did not have access to all of the necessary medical records,[7] that the missing records "would be very important to [him,]" and who struggled to fully respond to the ALJ's question due to a lack of information. AR at 92, 95, 100, and 101. Because of the weight the ALJ assigned to Dr. Duby's opinion, the ALJ should have addressed Dr. Duby's concerns about the inadequacy of the medical record before him and fairly developed the record.[8]

---

[7] Specifically, Dr. Duby testified that he did not "really have any GI clinical notes subsequent to November of 2016" and later that he did not "have any gastroenterology clinic notes for the last seven months." AR at 92, 95.

[8] *See* *Labrown v. Astrue*, 2012 WL 5499985, at *6 (C.D. Cal. Nov. 13, 2012) (reversing and remanding the ALJ's decision where ALJ relied heavily on the testimony of the medical expert, but ignored the medical expert's "equivocations and his concern over the lack of a complete record upon which to assess" Plaintiff's mental impairment and noting that "the ALJ had a duty to supplement the record to resolve the ambiguities identified by the doctor.") (citing *Tate v. Astrue*, 2012 WL 1229886, at *6 (C.D. Cal. Apr. 12, 2012) (ALJ erred in not further developing record when "ME suggested that it was difficult for her to form an opinion with respect to Plaintiff's disability" and ultimate assessment of Plaintiff's RFC was "highly equivocal") and *Rosol v. Astrue*, 2009 WL 3122779, at *3 (C.D. Cal. Sept.25, 2009) ("Having relied on the ME's opinion, the ALJ is not free to ignore the ME's equivocal testimony that there was insufficient evidence without treatment records to review.")).

18cv546-JLS(BLM)

**B.    Subjective Symptom Testimony**

Plaintiff argues that the ALJ failed to consider all of his symptoms such as frequent urination.  Pl.'s Mot. at 3.  Defendant argues that the ALJ properly considered Plaintiff's subjective complaints.  Def.'s Mot at 12-15.

1.    Relevant Law

The Ninth Circuit has established a two-part test for evaluating a claimant's subjective symptoms.  See Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. (internal quotation marks and citation omitted).  The claimant, however, need not prove that the impairment reasonably could be expected to produce the alleged degree of pain or other symptoms; the claimant need only prove that the impairment reasonably could be expected to produce some degree of pain or other symptom. Id.  If the claimant satisfies the first element and there is no evidence of malingering, then the ALJ "can [only] reject the claimant's testimony about the severity of her symptoms . . . by offering specific, clear and convincing reasons for doing so." Id. (internal quotation marks and citation omitted).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Reddick, 157 F.3d at 722 (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)).  The ALJ's findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [Plaintiff's] testimony." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002).

When weighing the claimant's testimony, "an ALJ may consider . . . reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." Orn v. Astrue, 495 F.3d 625, 636 (9th Cir. 2007) (internal quotation marks and citation omitted).  An ALJ also may consider the claimant's work record and testimony from doctors and third parties regarding the "nature, severity, and effect of the symptoms" of which the claimant complains. Thomas, 278 F.3d at 958–59 (internal quotation marks and citation

omitted); see also 20 C.F.R. § 404.1529(c). If the ALJ's finding is supported by substantial evidence, the court may not second-guess his or her decision. See Thomas, 278 F.3d at 959; Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162-63 (9th Cir. 2008) (where the ALJ's credibility assessment is supported by substantial evidence, it will not be disturbed even where some of the reasons for discrediting a claimant's testimony were improper).

Neither party contests the ALJ's determination that Plaintiff has the following severe impairments: "ulcerative colitis; osteoarthritis of the right hip; degenerative disease of the lumbar spine; osteoarthritis of the left hip; osteoarthritis of the cervical spine; sleep apnea; and, arthritis of the shoulders (20 CFR 404.1520(c) and 416.920(c))." AR at 13. Because the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms"—a finding that is not contested by either party—the first prong of the ALJ's inquiry regarding Plaintiff's subjective symptoms is satisfied. See AR at 15; see also Lingenfelter, 504 F.3d at 1036; Pl.'s Mot.; Def.'s Mot. Furthermore, neither party alleges that the ALJ found that Plaintiff was malingering. See Pl.'s Mot.; Def.'s Mot. As a result, the Court must determine whether the ALJ provided clear and convincing reasons for discounting Plaintiff's subjective claims regarding his symptoms. See Lingenfelter, 504 F.3d at 1036.

The ALJ identified a number of reasons for discounting Plaintiff's subjective claims. See AR at 15-18. The Court will consider each reason individually.

2. Inconsistent with Medical Evidence

The ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [his] decision." AR at 15. With regards to Plaintiff's claim that he is disabled because of "HTN, ulcerative colitis, uncontrolled bowel, constant urination, rectal pain, dizziness and constant dehydration[,]" the ALJ stated that:

The objective medical evidence, showing rather routine and conservative management of the claimant's conditions, and mostly mild to moderate imaging and clinical findings, simply does not establish physiological abnormalities, which would limit the claimant's daily activities to the debilitating degree alleged or

17

preclude the claimant from performing at the residual functional capacity as assessed above.

Id. at 18. With regard to Plaintiff's ulcerative colitis, the ALJ considered Plaintiff's testimony that he continues to have up to five bowel movements a day and found it to be a sign that Plaintiff's condition had improved with treatment as he had previously reported having ten to twelve bowel movements a day. Id. at 15-16 (citing AR at 1981, 2000, 2900, 2936, 2980). The ALJ noted that the record shows a reduction in the number of Plaintiff's daily bowel movements since 2012 and that there have been no reports of malnutrition, anemia, or ongoing pain treatment due to Plaintiff's colitis treatments. Id. The ALJ also considered Plaintiff's testimony regarding the fact that although he had lost sixteen pounds in the past few months, he had gained about twenty pounds since 2012 when he was first diagnosed with ulcerative colitis and he requested help with weight loss in 2017. Id. at 15-16. The ALJ cited to the record and noted that Plaintiff had a BMI of 30.0 – 30.9 in February 2017. Id. at 16 (citing AR at 2574). Finally, the ALJ focused on the fact that Plaintiff's treatments have been successful in reducing his symptoms and "ha[ve] been conservative in nature" without any reported side effects. Id. at 17.

With regard to Plaintiff's diabetes mellitus, the ALJ found that it was controlled with diet only, no medication or insulin, and that his visual acuity remained the same despite mild diabetic retinopathy. Id. at 16 (citing AR at 2580, 2650). With regard to Plaintiff's orthopedic impairments, the ALJ found that despite Plaintiff's complaints of severe pain, the medical records showed little or mild findings and conservative treatment was successful in reducing Plaintiff's pain and other symptoms. Id. The ALJ further noted that the medical evidence does not support Plaintiff's allegation that he cannot do much activity during his day as it shows generally normal exams, that his conditions are well controlled with treatment, and that he suffers no side effects from his treatment. Id. at 17. The ALJ noted that no surgical intervention has been recommended and that some of his issues were identified as normal aging that "comes with the passing years." Id. at 16 (quoting AR at 2652). Finally, with regard to Plaintiff's sleep apnea, the ALJ found that it was moderate and being treated with a CPAP device and instruction to lose weight. Id. at 16 (citing AR at 2670-2674, 2676-2677, 2779-2780).

The Court's review of the cited medical records establishes that there is evidence in the record supporting the ALJ's determination that Plaintiff's subjective symptoms and pain are not consistent with the objective medical evidence. While the absence of objective medical evidence to support plaintiff's subjective complaints is a factor an ALJ can consider in discrediting symptom testimony, it cannot be the sole factor. See Reddick, 157 F.3d at 722 (citing Bunnell, 947 F.2d 341, 343 (9th Cir.1991). Thus, this reason is not sufficient unless there is at least one other reason for rejecting Plaintiff's subjective symptoms.

3. Activities of Daily Living

The ALJ found that Plaintiff's described daily activities are limited to the extent one would expect given the complaints he has made regarding his symptoms and limitations. AR at 17. However the ALJ found that while Plaintiff claims to do very little during his day, the medical evidence indicates that this is not due to his impairments which are well controlled with prescribed treatments. Id. Defendant argues that the ALJ provided valid reasons to discount Plaintiff's statements that he had completely disabling symptoms and limitations. See Def.'s Mot. at 15.

In determining a plaintiff's credibility, an ALJ may consider whether a plaintiff's daily activities are consistent with the asserted symptoms. See Thomas, 278 F.3d at 958–59 (quoting Light, 119 F.3d at 792); see also Social Security Ruling 96–7p (stating that "the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements: [ ] The individual's daily activities").[9] While the fact that a plaintiff can participate in various daily activities does not necessarily detract from the plaintiff's credibility as to his specific limitations or overall disability, "a negative inference is permissible where the activities contradict the other testimony of the claimant, or where the activities are of a nature and extent to reflect transferable work skills." Elizondo v. Astrue, 2010 WL 3432261, at *5 (E.D. Cal. Aug. 31, 2010). "Daily activities support an adverse credibility finding if a claimant is able

---

[9] Social Security Rulings are binding on ALJs. See Terry v. Sullivan, 903 F.2d 1273, 1275 n. 1 (9th Cir.1990).

18cv546-JLS(BLM)

to spend a substantial part of her day engaged in pursuits involving the performance of physical functions or skills that are transferable to a work setting." Id. (citing Orn, 495 F.3d at 639; Morgan, 169 F.3d at 600; Thomas, 278 F.3d at 959). "A claimant's performance of chores such as preparing meals, cleaning house, doing laundry, shopping, occasional childcare, and interacting with others has been considered sufficient to support an adverse credibility finding when performed for a substantial portion of the day." Elizondo, 2010 WL 3432261, at *5 (citing Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008); Burch v. Barnhart, 400 F.3d 676, 680–81 (9th Cir. 2005); Thomas, 278 F.3d at 959; Morgan, 169 F.3d at 600; Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990)).

In his adult function report, Plaintiff wrote that he did not have a problem dressing, bathing, caring for his hair, shaving or feeding himself. AR at 464. Plaintiff further wrote that he could do tasks like cooking, laundry, cleaning, ironing, mowing, paying bills, and grocery shopping as long as he stayed close to a bathroom, but that he needed reminders to take care of his personal needs and to take his medicine. Id. at 464-467. Plaintiff also reported that he plans his errands around eating and bathroom locations because if he eats prior to leaving the house, he is likely to have a bowel movement shortly thereafter and at times he has no warning in advance. Id. at 436. Plaintiff did not testify at the hearing regarding his activities of daily living. Id. at 89-115.

Apart from referencing Plaintiff's "described daily activities[,]" the ALJ neither described specific activities that Plaintiff engaged in that would bear on his ability to engage in the activities of the workplace, nor discussed whether Plaintiff engaged in those activities for a substantial part of the day and on a daily basis. Id. at 17; see also Reddick, 157 F.3d at 722 (holding that sporadic activities followed by periods of rest are not inconsistent with subjective complaints of severe pain). Without such additional facts, Plaintiff's ability to care for his personal needs does not undermine his position that he cannot work, and is not a clear and convincing reason for finding Plaintiff less than fully credible. See Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her

credibility as to her overall disability."); <u>Heine-O'Brien v. Astrue</u>, 359 Fed.Appx. 699, 701 (9th Cir. 2009) (citing <u>Orn</u>, 495 F.3d at 639) (the ability to care for personal needs does not necessarily indicate the ability to perform gainful employment); <u>Garrison v. Colvin</u>, 759 F.3d 995, 1016 (9th Cir. 2014) (quoting <u>Reddick</u>, 157 F.3d at 722) ("[r]ecognizing that 'disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations,' we have held that '[o]nly if [her] level of activity were inconsistent with [a claimant's] claimed limitations would these activities have any bearing on [her] credibility.") (alterations in original).

Accordingly, the ALJ failed to provide the requisite clear and convincing reasons for finding Plaintiff not fully credible based on Plaintiff's daily activities. The ALJ also failed to establish that Plaintiff's daily activities are transferable to a work setting and are performed for a substantial part of the day and on a daily basis. <u>See</u> <u>White</u>, 2014 WL 4187823, at *7 (ALJ must "specify how plaintiff's ability to perform such tasks would translate into an ability to perform gainful employment."). The Court therefore disregards this reason for discounting Plaintiff's credibility.

### 4.    Conservative Treatment

In determining Plaintiff's credibility, the ALJ noted that Plaintiff had been treated with various medication and infusion therapies which significantly reduced his symptoms and stated that "although [Plaintiff] received treatment for the allegedly disabling impairments, this treatment appears to be very successful in reducing his symptoms and has been conservative in nature.  In addition there are no reported side effects." AR at 15, 17.  Plaintiff challenges the ALJ's findings and argues that as of September 25, 2018, his ulcerative colitis is not being controlled.  Pl.'s Oppo. at 2, 3.  Defendant contends that "[t]he ALJ reasonably concluded that Plaintiff's ulcerative colitis was not disabling because it was effectively managed with medication treatment."  Def.'s Mot. at 15.

"[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." <u>Parra v. Astrue</u>, 481 F.3d 742, 750–51 (9th Cir. 2007) (citation omitted) (finding that treatment with over-the-counter pain medication was conservative treatment).  Claims of a lack of improvement may be rejected by pointing to clear

and convincing evidence that directly undermines it, such as evidence that a claimant's symptoms improved with the use of medication. See Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

In support of his findings, the ALJ noted that in with respect to Plaintiff's diabetes, the disease is controlled with diet only and no medications, including insulin, has been prescribed or necessary. Id. at 16 (citing AR at 2748 ("CURRENT DIABETES THERAPY: Diet")). With respect to Plaintiff's orthopedic impairments, the ALJ noted that "[n]o surgical intervention has ever been recommended[,]" Plaintiff participated in physical therapy, and was provided with knee braces, a lumbar corset, and a heating pad. Id. (citing AR at 2748, 2757, 2773, 2790, 2817, and 2914). Finally, with respect to Plaintiff's sleep apnea, the ALJ noted that Plaintiff was provided with a CPAP device and advised to lose weight. Id. (citing AR at 2779-2780 ("Even modest weight reduction may result in significant reduction of OSA severity and in some cases it could be curative")).

In regards to Plaintiff's ulcerative colitis, the ALJ noted that Plaintiff has been treated with medications and infusion therapies. Id. at 15. The ALJ further noted that Plaintiff received very little treatment in 2013 for his ulcerative colitis and that after a brief hospitalization in 2014, Plaintiff's condition improved with less bowel movements, seepage of stool, and bleeding, although the urgency of Plaintiff's bowel movements and his complaints of abdominal pain did increase in November 2016 and March 2017 respectively. Id. at 15-16 (citing AR at Exhibits 16F, 19F, 21F, and 30F).

In light of the above, the Court concludes that the ALJ's finding that Plaintiff's conservative treatment has been successful in reducing Plaintiff's symptoms was supported by substantial evidence in the record and provides a clear and convincing reason for discounting his subjective claims. See id. at 17; see also Nash v. Astrue, 2012 WL 6700582, at *9 (C.D. Cal. Dec. 21, 2012) (declining to "second guess" the ALJ's characterization as "routine conservative treatment" the prescribing of pain medicine, muscle relaxers, Humira injections, Remicade infusions, physical therapy, weight management, healthy diet, home exercise, Suboxone treatment, and acupuncture for pain and ankylosing spondylitis); but see Jones v. Astrue, 2008

18cv546-JLS(BLM)

WL 1970645, at *16 (E.D. Cal. May 5, 2008) (suggesting Remicade and Humira injections were not conservative treatment).

   5.   Side Effects of Medication

In reaching his credibility determination, the ALJ relied in part on the fact that Plaintiff did not report any medication side effects.  AR at 17.

Typically, an "ALJ may consider the lack of side effects from prescribed medications in weighing credibility."  Mossett, 2008 WL 2783177 at *5 (citing Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir.1995) (stating that "[a]n ALJ is clearly allowed to consider the ability to perform household chores, the lack of side effects from prescribed medications, and the unexplained absence of treatment for excessive pain," as well as the presentation of conflicting information about drug use)). Here, however, Plaintiff's lack of side effects from his medication is not a sufficient basis for discounting his symptom testimony.

Plaintiff does not allege that he is impaired due to the side effects of his medication nor does he testify about the side effects of his medication or claim that he is unable to work due to the side effects of his medication.[10]  AR at 89-115.  The ALJ fails to address how Plaintiff's lack of side effects from his medication impacts his credibility.  As such, the ALJ's finding that the side effects of Plaintiff's medications would not prevent Plaintiff from performing within the RFC that he found, is not relevant to the ALJ's credibility finding and does not constitute a clear and convincing reason to discount plaintiff's subjective testimony.  See Manzo v. Astrue, 2011 WL 3962254, *8 (C.D. Cal. Sept.7, 2011) (finding that the ALJ failed to state clear and convincing reasons for rejecting plaintiff's testimony and stating "it is not clear why the ALJ referred to the lack of side effects of Plaintiff's medications, or how the lack of side effects reflected poorly on Plaintiff's credibility. Plaintiff was prescribed pain medication by his physicians, but Plaintiff did

---

[10] Plaintiff does mention that his use of 6MP, an anti-TNF therapy which turns off your immune system, injured his liver at one point and that another treatment left him dehydrated, but does not claim to be permanently impaired or unable to work as a result of those side effects.  AR at 106-107.  Plaintiff also notes that many things *could* happen to someone with all of his treatments.  Id.

not complain of any side effects due to the medication"); see also Mossett, 2008 WL 2783177 at *5 (finding that the "the absence of medication side effects is immaterial to the ALJ's credibility determination in this case" because the plaintiff did not allege that he was impaired due to the side effects of his medication and noting that the plaintiff did not testify about the side effects of his medication, allege that he was unable to work due to his medication, or report any disabling side effects from his medication to any physician.).

### 6. Conclusion

The ALJ provided clear and convincing reasons for discounting Plaintiff's subjective claims regarding his symptoms. In addition to providing substantial evidence to support his finding that Plaintiff's claims were inconsistent with the medical evidence, the ALJ properly provided substantial evidence in support of his finding that conservative treatment has been successful in reducing Plaintiff's symptoms. Accordingly, the Court **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED** on this ground.

### C. **Plaintiff's Additional Medical Evidence & Sentence Six Remand**

Plaintiff's motion states that he has attached additional medical evidence that he believes has not been taken into consideration and that shows he is still trying to successfully manage his ulcerative colitis and that he has had to increase his medication. Pl.'s Mot. at 3, 7 ("Exh. 5"), 8 ("Exh. 6"), 9 ("Exh. 7), and 10 ("Exh. 8"). Plaintiff also attaches medical evidence to his opposition showing that (1) the uncontrolled ulcerative colitis is contributing to his other physical limitations such as arthritis and lower back pain, (2) he suffers from a pinched nerve in his neck that has led to limitations and (3) he had a suspected stroke or brain infection. Pl.'s Oppo. at 3-4, 12-15 ("Pl.'s Oppo. Exh. 4"), 16-32 ("Pl.'s Oppo. Exh. 5"), 33-34 ("Pl.'s Oppo. Exh. 6"), 35-42 ("Pl.'s Oppo. Exh. 7").

Defendant contends that Plaintiff's recently submitted medical evidence is not material to the instant matter because it is not related to the relevant time period in this case which is November 1, 2012 – August 23, 2017. Def.'s Mot. at 17-18. Defendant therefore contends that no further administrative proceedings should be ordered to evaluate the records and that Plaintiff can instead submit the new evidence as part of a new disability application. Id. at 18.

While Plaintiff does not explicitly state that he is seeking remanded in light of new evidence, he is proceeding *pro se* and the Court will analyze this issue out of an abundance of caution.

Section 405(g) of Title 42 of the United States Code "authorizes district courts to review administrative decisions in Social Security benefit cases." Akopyan v. Barnhart, 296 F.3d 852, 854 (9th Cir. 2002). Pursuant to sentences four and six of section 405(g), a district court may remand a case to the Commissioner of Social Security. 42 U.S.C. § 405(g). A remand pursuant to sentence six does not constitute a final judgment and can only occur "(1) "where the Commissioner requests a remand before answering the complaint," or (2) "where new, material evidence is adduced that was for good cause not presented to the agency." Little v. Colvin, 2015 WL 8485238, at *6 (D. Or. Dec. 9, 2015) (quoting Akopyan, 296 F.3d at 854). A claimant bears the burden of showing materiality and good cause. Id. Materiality for purposes of section 405(g) means that the evidence "bear[s] directly and substantially on the matter in dispute," and there is a "reasonabl[e] possibility that the new evidence would have changed the outcome" of the ALJ's determination. Bruton v. Massanari, 268 F.3d 824, 827 (9th Cir. 2001) (quoting Booz v. Secretary, 734 F.2d 1378, 1380-81 (9th Cir. 1984)). Good cause is demonstrated by showing that the new evidence was not available earlier. Little v. Colvin, 2015 WL 8485238 at *6.

Many of the documents that Plaintiff submitted as new evidence are dated September 2017 or later. See Exhs. 8 and 7; see also Pl.'s Oppo. Exhs. 1 and 4. Here, the ALJ issued his decision on August 23, 2017. AR at 19. As stated above, evidence is new and material only where it relates to the period on or before the date of the ALJ's decision. Benveniste v. Astrue, 2010 WL 3582208, at *3 (C.D. Cal. Sept. 9, 2010) ("evidence is new and material only where it relates to the period on or before the date of the ALJ's decision") (citing 20 C.F.R. § 404.970). Accordingly, the Court must examine all of the documents dated August 24, 2017 or later to determine whether they relate to Plaintiff's medical conditions on or before August 23, 2017. If the documents relate to Plaintiff's medical condition prior to August 24, 2017, the Court must determine whether the records are material and if there is good cause for Plaintiff's failure to

include them in the original proceeding. The Court has identified the following categories of documents that were created after August 23, 2017:

### 1. Emails from Dr. Bittleman

Plaintiff's evidence includes five emails from Dr. Bittleman dated September 26, 2017, October 10, 2017, July 20, 2018, July 23, 2018, and August 14, 2018. The emails (1) show that an EME test revealed that a pinched nerve in Plaintiff's neck is the cause of the arm pain Plaintiff has experienced [see Pl.'s Oppo. Exh. 4], (2) discuss Plaintiff's neck MRI and conclude that physical therapy and pain management were the best treatment for Plaintiff, not surgery which Dr. Bittleman did not think would help Plaintiff [see id.], (3) note that Plaintiff's liver tests were "up slightly," but would be monitored and that Plaintiff's A1C was "excellent at 6.5" which was a good thing [see Exh. 8], (4) recognize an increase in Plaintiff's duloxetine dose to reduce pain from 60mg to 90 mg [see Exh. 7], and (5) confirm that Plaintiff's vitamin D level in August 2018 was "fine at 41" [see Pl.'s Oppo. Exh. 1].

### 2. Radiology Report

The August 10, 2018 report, taken in response to Plaintiff's report of pain, reviewed images of Plaintiff's elbow (two views), wrists (three or more views), hands (three or more views), and shoulders (two or more views). Pl.'s Oppo. Exh. 5 at 16. Some of the images were compared to a June 27, 2017 shoulder radiograph. Id. The report impressions noted "[n]o acute osseous abnormality, [m]ild degenerative changes of the right radiocarpal and right first carpometacarpal joints, [m]oderate osteoarthrosis of the left radiocarpal and left distal radiounlar joints, [m]ild osteoarthrosis of the left first carpometacarpal joint, and [m]ild osteoarthrosis of the acromioclavicular joints bilaterally." Id. at 17.

### 3. Internet Searches

Plaintiff's new evidence includes printouts from various internet searches regarding his conditions. Specifically, Plaintiff includes the results of a September 11, 2017 Google search on ulcerative colitis which defines the condition and discusses its prevalence, symptoms, and treatments. Pl.'s Oppo. Exh. 5. Plaintiff also includes an article from the Arthritis Foundation on IBS defining the condition and discussing it causes, symptoms, and treatment. Id. The article

18cv546-JLS(BLM)

was printed on September 25, 2018.  Id.

4.    Miscellaneous

The remaining documents include (1) findings from a May 31, 2018 exam stating that Plaintiff was seen for a follow-up of ulcerative colitis and that he was exhibiting symptoms possibly consistent with IBS and increasing his medication (Vedolizumab), (2) an undated medication list [see Exh. 5], (3) a September 26, 2017 Nerve Conduction Study and Electromyography Report stating that the evidence supports "mild to moderate bilateral chronic C8 radiculopathies without ongoing denervation[,]" [see Pl.'s Oppo. Exh.4], (4) an October 6, 2017 VA note from Margaret Mends, Pharm. D. stating that Plaintiff has ulcerative colitis and that his symptoms have increased while on Vedolizumab [see Pl.'s Oppo. Exh. 4], (5) an August 17, 2018 nurse note stating that Plaintiff complained of more GI symptoms and developed diarrhea [see Pl.'s Oppo. Exh. 1], and (6) prescription history information that was last updated on September 25, 2018 [see Pl.'s Oppo. Exh. 7].

As summarized above, the majority of the documents dated after August 23, 2017 are not material as they do not "bear directly and substantially on the matter in dispute," and there is no "reasonabl[e] possibility that the new evidence would have changed the outcome" of the ALJ's determination.  Bruton, 268 F.3d at 827 (quoting Booz, 734 F.2d at 1380-81).  Appropriate vitamin D and A1C levels, increased pain, medication, and liver tests, and symptoms consistent with IBS eight to twelve months after Plaintiff's hearing, generic internet articles, and changes in prescriptions, are not materially relevant to Plaintiff's medical condition prior to August 23, 2017.  To the extent that there are records that may pertain to Plaintiff's medical condition prior to his hearing, Plaintiff provides no good cause for his failure to include them in the record that was before the ALJ.  See Pl.'s Mot; see also Pl.'s Oppo.  Additionally, The Ninth Circuit has held that if the new evidence merely shows that the claimant's condition deteriorated after the administrative hearing, then it is not material to the claimant's condition during the time at issue.  See Sanchez v. Sec'y of Health and Human Serv., 812 F.2d 509, 512 (9th Cir. 1987).

Some of the new evidence submitted by Plaintiff is dated before August 23, 2017.  These documents include various radiology reports.  The reports span from November 7, 2012 through

18cv546-JLS(BLM)

March 29, 2017. Pl.'s Oppo. Exh. 5. The November 7, 2012 testing was done in response to Plaintiff's abdominal cramps and included "ABDOMEN 2 VIEWS, SUPINE AND UPRIGHT/OR DECUBITUS." Id. at 9. The report impression states that the images show an unremarkable bowel gas pattern without bowl distension, no pneumoperitoneum, no evidence of urolithiasis, and "abnormal convexity of the femoral necks bilaterally, query cam type femoral acetabular impingement syndrome. Traumatic changes at the superior acetabular rims bilaterally with an os acetabulum on the left." Id. An October 23, 2015 report reviewed images of Plaintiff's pelvis and two views of his hip and was taken in response to Plaintiff's complaints of pain. Id. at 13. The report found normal osseous mineralization, no fractures, maintained osseous alignment, moderate right and mild left hip osteoarthrosis, ossicles adjacent to both acetabula, degenerative disc disease at L5-S2, and unremarkable soft tissue. Id. The June 27, 2016 report, taken due to Plaintiff's ulcerative colitis and steroid exposure, reviewed Plaintiff's bone density and vertebral deformity assessment. Id. at 11. The report found that Plaintiff had normal bone mass, but risk factors including glucocorticoid therapy. Id. at 12. The November 20, 2016 report, taken due to Plaintiff's "TIA"[11] reviewed an MRI of Plaintiff's brain without contrast. Oppo. Exh. 6. The impression stated "[n]o actue intracranial abnormality. Sequelae of hypertensive changes suspected." Id. The March 29, 2017 report taken in response to Plaintiff's report of pain reviewed five images of Plaintiff's lumbar spine and a single image of his pelvis. Oppo. Exh. 5 at 14. The impression was that there was "[n]o acute fracture of the lumbar spine or pelvis[,]" "[c]hronic bilateral pars defects at L5, Grade 1 anterolisthesis of L5 upon S2 has slightly increased since 2004" possibly indicating segmental instability, "[m]oderate degenerative disc disease ar L5-S1 is similar[,]" and "[m]ild-to-moderate right and mile left hip osteoarthrosis are unchanged." Id. at 14-15.

---

[11] TIA stands for Transient Ischemic Attack which "is like a stroke, producing similar symptoms, but usually lasting only a few minutes and causing no permanent damage." https://www.mayoclinic.org/diseases-conditions/transient-ischemic-attack/symptoms-causes/syc-20355679.

18cv546-JLS(BLM)

Plaintiff also included (1) an article that was published in June 2017 from Harvard Health Publishing entitled Arthritis Associated with Inflammatory Bowel Disease What Is It?, (2) a February 29, 2016 gastroenterology outpatient note stating that Plaintiff reported feeling okay with no seepage of stool, five bowel movements per day, some liquid and soft stools, some right side abdominal pain, mild joint pains in hips, ankles, and knees[12], and (3) a January 12, 2015 VA Admissions and Discharges summary after Plaintiff's complaint of bloody diarrhea and diagnosing an ulcerative colitis flare. See Oppo. at 8-9 ("Oppo. Exh. 2"); see also Oppo. at 10-11 ("Oppo. Exh. 3"); and Oppo. Exh. 5.

Despite the fact that each of the documents was dated well before Plaintiff's July 5, 2017 hearing, Plaintiff offers no explanation as to why the documents were not included in the materials he presented to the ALJ let alone good cause for the failure. See Pl.'s Mot; see also Pl.'s Oppo. Because Plaintiff has not demonstrated good cause, the Court need not consider whether the evidence is material. See Scarpati v. Secretary of Health & Human Serv., 1993 U.S. App. Lexis 21763, *4-*5 (9th Cir. 2013) ("[s]ince we find that she did not demonstrate good cause for the failure to introduce the evidence in the administrative hearing, we need not address the materiality of the information").

Because Plaintiff is unable to satisfy both the materiality and good cause prongs required for a sentence six remand, the Court **RECOMMENDS** that a request to remand pursuant to sentence six be **DENIED**.

## **REMAND v. REVERSAL**

"The decision whether to remand for further proceedings or simply to award benefits is within the discretion of [the] court." McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989) (internal citation omitted). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004). On the other hand, if the record has been fully developed such that further

---

[12] This document does not qualify as new evidence because it is already a part of the record that was reviewed by the ALJ. See AR at 2000. Accordingly, the Court will not consider this documents in its analysis of a sentence six remand.

administrative proceedings would serve no purpose, "the district court should remand for an immediate award of benefits." Id. "More specifically, the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." Id. (citing Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000)). The Ninth Circuit has not definitely stated whether the "credit-as-true" rule is mandatory or discretionary. See Vasquez v. Astrue, 572 F.3d 586, 593 (9th Cir. 2009) (acknowledging that there is a split of authority in the Circuit, but declining to resolve the conflict); Luna v. Astrue, 623 F.3d 1032, 1035 (9th Cir. 2010) (finding rule is not mandatory where "there are 'outstanding issues that must be resolved before a proper disability determination can be made'" (internal citation omitted)); Shilts v. Astrue, 400 F. App'x 183, 184-85 (9th Cir. Oct. 18, 2010) (explaining that "evidence should be credited as true and an action remanded for an immediate award of benefits only if [the Benecke requirements are satisfied]" (internal citation omitted)).

Here, because the Court finds that the record is incomplete, further administrative proceedings to develop the record would be useful and is appropriate. See Benecke, 379 F.3d at 593. Similarly, an immediate award of benefits is not appropriate because there are outstanding issues that must be resolved before a determination of disability can be made. See id. Therefore, this Court **RECOMMENDS REVERSING** the decision of the ALJ and **REMANDING** for further proceedings to address the errors noted above.

## CONCLUSION

For the reasons set forth above, this Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **GRANTED IN PART AND DENIED IN PART**, Defendant's Cross-Motion for Summary Judgment be **GRANTED IN PART AND DENIED IN PART**, and the case be remanded for further proceedings.

**IT IS HEREBY ORDERED** that any written objections to this Report and

Recommendation must be filed with the Court and served on all parties no later than **February 15, 2019**.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **March 1, 2019**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED**.

Dated:  2/1/2019

Hon. Barbara L. Major
United States Magistrate Judge

18cv546-JLS(BLM)